**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| PATRICE SMITH, | : | |
| Plaintiff, | : | |
| v. | : | CASE NO.: 7:23-CV-00098 (WLS) |
| CAPTAIN DS LLC, | : | |
| Defendant. | : | |

**ORDER**

Before the Court is Defendant Captain D's, LLC's ("Defendant") Motion for Summary Judgment (Doc. 15) ("the Motion"). For the reasons discussed below, that Motion (Doc. 15) is **DENIED**.

**I. RELEVANT PROCEDURAL BACKGROUND**

Plaintiff Patrice Smith ("Plaintiff") initiated the above-captioned action on July 17, 2023, by filing a Complaint (Doc. 1-2) in Lowndes County Superior Court. Defendant removed the action by filing a Notice of Removal (Doc. 1) in this Court on September 6, 2023, based on diversity jurisdiction.

Defendant filed the instant Motion for Summary Judgment (Doc. 15) on August 21, 2024. Plaintiff filed a Response (Docs. 17 & 18) on September 11, 2024.[1] The period for Defendant to file a reply has elapsed with no such reply filed by Defendant. After a preliminary review, the Court entered an Order (Doc. 19) for the Parties to submit supplemental briefing. The Parties timely complied with this Order. (*See* Docs. 20 & 21). Thus, the Motion is fully briefed and ripe for review.

---

[1] Plaintiff timely filed a response on September 11, 2024. (Doc. 17). However, Plaintiff used the incorrect format, and the Clerk instructed her to refile with the correct format. Plaintiff did so on September 12, 2024. (Doc. 18). The Court finds that Plaintiff substantially complied with the briefing schedule set out in Local Rule 7.2 and considers her response timely. *See* M.D. Ga. L.R. 7.2. The Court, as such, considers the document filed on September 12, 2024, for purposes of the instant Motion, even though it was filed after the response period.

1

## II. MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).[2]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might

---

[2] Local Rule 56 requires the movant for summary judgment to attach to the motion a separate statement of the material facts about which the movant contends there is no genuine dispute to be tried. M.D. Ga. L.R. 56. The respondent shall attach to their response a separate statement of material facts to which respondent claims there exists a genuine dispute to be tried. *Id.* Response shall also be made to each of the movant's numbered material facts. *Id.* Defendant has complied with Local Rule 56. However, although Plaintiff attaches the required statements, Plaintiff fails to support her assertions of fact with citations to the Record. *See* M.D. Ga. L.R. 56 ("Each material fact shall be numbered separately and shall be supported by specific citation to particular parts of materials in the record."). Plaintiff has thus failed to comply with Local Rule 56. Nevertheless, the Court will not accept Defendant's invitation to deem its statement of material facts admitted, based solely on Plaintiff's failure to comply with Local Rule 56.

affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet that burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of an element of its case on which it bears the ultimate burden of proof. *See id.* at 322–24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Moreover, to avoid summary judgment after the movant has met its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

### III.   FACTUAL BACKGROUND

On July 21, 2021, Plaintiff ordered a take-out dinner from a Captain D's restaurant for her and her husband. (Doc. 15-3 at 36).[3] Plaintiff called ahead and ordered her usual meal: fish, corn, and green beans. (Doc. 17-2 at 1 ¶ 2). When Plaintiff arrived, her dinner was packaged and wrapped for her. (*Id.*) She took the food from the restaurant and her husband drove her home. (*Id.*) Once Plaintiff arrived home, she unwrapped her food and placed it on the table without reheating the food or transferring it to another dish. (*Id.* at 1 ¶ 3).

Plaintiff then began to eat the food. (Doc. 15-3 at 38–39). She attempted to eat her green beans, but when she began to chew, she bit down on something "extremely hard[.]" (*Id.*) Plaintiff immediately "felt something crack," (*Id.* at 42), and "felt tremendous pain in one or more of the lower right teeth in the rear" of her mouth. (Doc. 17-2 at 2 ¶ 4).

When Plaintiff examined the green beans, she located an "object that looks like a green bean, but is a different color and shape" that was "almost petrified." (*Id.* at 2 ¶ 5). The next

---

[3] The following facts are derived from Defendant's Motion for Summary Judgment (Doc. 15); Plaintiff's Response (Doc. 18); the Depositions in the Record (Docs. 15-2 & 15-3); and all exhibits attached to the foregoing documents.

3

day, Plaintiff took the petrified object back to the Captain D's restaurant to file a complaint. (Doc. 15-3 at 39). She spoke with the manager who took the petrified bean from her and threw it away. (*Id.*)[4]

From the Record placed before the Court, it is unclear the exact course of medical treatment Plaintiff received as a result of her dental injury and the precise extent of the injuries she sustained. Plaintiff avers and testifies that the petrified bean fractured her tooth which eventually needed to be extracted. (Doc. 15-3 at 43–58); (Doc. 17-2 at 2 ¶ 8–11). However, Plaintiff's narrative about her medical testimony, alone, is not sufficient to create a genuine dispute regarding her treatment and the extent of her injury. The statements of her treating providers that she recounts are inadmissible hearsay, and the precise nature of her treatment and medical extent of her injuries are not facts within her personal knowledge. *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (a district court may consider hearsay on a motion for summary judgment only "if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" (quoting *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999)). In any event, at least three things are sufficiently clear from the medical documentation and expert medical testimony in the Record to create a genuine dispute.

First, when Plaintiff bit down on the petrified bean it caused "the wire on [Plaintiff's] braces in the right back side [of her mouth] to break pierce [sic] the inside of [her] cheek[.]" (Doc. 16-2 at 2 ¶ 4). She scheduled an orthodontic appointment several days later at which her provider repaired her braces in the right back side of her mouth. (Doc. 15-4 at 27) ("Placed composite back onto end of [Lower Right arch wire]. Smoothed [Upper right end of arch wire]."). Second, at some point between October 19, 2021, and November 14, 2022, Plaintiff saw a dentist who removed one of her back-right molars although it is unclear whether this was a direct result of the petrified bean. (Doc. 17-2 at 2–3 ¶ 11) ("I . . . was subsequently seen by Dr. Tareky Elseweifi and he was able to extract the portion of my tooth that had been broken . . . ."); (Doc. 15-5 at 44) (Dr. Wayne Hester: "On 10/19/21 we removed braces, tooth No. 31 was present and then 11/14/22 an x-ray was taken and No. 31 was missing."). Because

---

[4] Because Defendant's employee threw away the object that caused Plaintiff's dental injury it is unclear what the object was exactly. For the sake of simplicity, the Court will refer to the object as a petrified bean hereafter.

there is no testimony from Dr. Elseweifi in the Record, however, it is unclear whether this tooth extraction was a direct result of the petrified bean. (*See generally* Docs. 15 & 21). Third, Plaintiff suffered significant pain and suffering as a result of the injury which occurred when she bit down on the petrified green bean. (*See* Doc. 17-2 at 3 ¶ 12); (*see generally* Doc. 15-3 at 43–58).

## IV. LAW AND ANALYSIS

Defendant moves for summary judgment on all of Plaintiff's claims. (*See generally* Docs. 15 & 20). Essentially, Defendant contends that summary judgment is warranted because (1) Plaintiff has failed to meet her burden that Defendant breached a duty owed, (Doc. 15 at 4–6); and (2) Plaintiff has failed to adduce sufficient evidence to show causation. (Doc. 15 at 7–10). For the reasons discussed below, Plaintiff's Negligence claim is dismissed, and Defendant's motion for summary judgment is denied as to Plaintiff's remaining breach of warranty claim.

Plaintiff's Complaint alleges two claims: one for negligence and another for breach of warranty. (*See generally* Doc. 1-2). Both types of claims are cognizable under Georgia law. *See* O.C.G.A. §§ 51-1-23 & 11-2-314. From Defendant's initial brief and Plaintiff's Response, it was unclear upon which claims Defendant moved for summary judgment, and upon which claims Plaintiff opposed. (*See generally* Docs. 15 & 18). The Parties' supplemental briefs, however, significantly clarified the issues. Most importantly, Defendant contends summary judgment is warranted as to both claims. The Court addresses each below.

### A.    Negligence

Defendant moves for summary judgment on Plaintiff's § 51-1-23 negligence claim. (Doc. 20 at 3–5). Plaintiff, however, indicates in her supplemental brief that she does not oppose summary judgment on that claim and wishes to proceed only with her breach of warranty claim. (Doc. 21 at 1) ("Plaintiff hereby withdraws her claim for injuries based upon negligence."). The Court construes Plaintiff's response as a motion for voluntary dismissal of her § 51-1-23 negligence claim made under Rule 41. *See* Fed. R. Civ. P. 41.

Under Rule 41, after a motion for summary judgment has been filed, a plaintiff may voluntarily dismiss a claim only by a stipulation of dismissal signed by all parties who have appeared—which the Parties have not submitted, *see* Fed. R. Civ. P. 41(a)(1)(A)(ii), or by

5

requesting a court order. *See id.* at 41(a)(2). The court may issue such an order "on terms that the court considers proper." *Id.* "A district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2)[.]" *Arias v. Cameron*, 776 F.3d 1262, 1268 (11th Cir. 2015) (citing *Pontenberg v. Bos. Sci. Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001) (per curiam)). Although a dismissal under Rule 41(a)(2) is without prejudice unless the dismissal order states otherwise, a district court "has the discretion under Rule 41(a)(2) to dismiss" a plaintiff's case with prejudice. *Cunningham v. Whitener*, 182 F. App'x 966, 971 (11th Cir. 2006).

Here, the Court finds that a dismissal with prejudice is proper. Plaintiff's negligence claim is based on nearly identical facts to Plaintiff's breach of warranty claim. Plaintiff has expressly chosen to pursue the breach of warranty claim and abandon her negligence claim. At this late stage in the proceedings, the Court finds that significant prejudice might be worked upon Defendant were Plaintiff allowed to pursue her negligence claim once the present case has been resolved. Accordingly, Plaintiff's negligence claim is **DISMISSED-WITH-PREJUDICE**. Defendant's motion for summary judgment on Plaintiff's negligence claim is thus **DENIED-AS-MOOT**.

### B. Breach of Warranty

As an initial matter, from Defendant's first brief, it was unclear to the Court whether Defendant moved for summary judgment on Plaintiff's breach of warranty claim at all. (*See* Doc. 15 at 4–12). The Court afforded Defendant the opportunity to clarify in a supplemental brief, which it submitted. (*See* Docs. 19 & 20). In that supplement, Defendant clarified that it also moved for summary judgment on Plaintiff's breach of warranty claim. (Doc. 20 at 2). Defendant also submitted additional arguments, attacking the sufficiency of Plaintiff's allegations of breach of warranty. (*See* Doc. 20 at 3–4).

The time to attack Plaintiff's pleading, however, has long-elapsed. *See generally* Fed. R. Civ. P. 12. If Defendant believed that Plaintiff's Complaint was a "shotgun pleading" and "failed to give [it] adequate notice" of Plaintiff's claims, then Defendant should have filed a timely motion under Rule 12 to dismiss Plaintiff's breach of warranty claim, or a timely motion

to strike the Complaint as a "shotgun pleading" under Rule 15.[5] However, at this stage in the proceedings, and particularly on a motion made under Rule 56, an argument attacking the sufficiency of the Complaint necessarily falls short. The Court must instead address Plaintiff's breach of warranty claim on its merits—applying the more rigorous standard Rule 56 demands.

Proceeding to those merits, Plaintiff's breach of warranty claim asserts that Defendant breached the implied warranty of merchantability, codified at O.C.G.A. § 11-2-314 when it sold her the petrified bean. (*See* Doc. 1-2 ¶¶ 6–14). O.C.G.A. § 11-2-314 codifies the Uniform Commercial Code cause of action for breach of the implied warranty of merchantability. *Mitchell v. BBB Servs. Co.*, 582 S.E.2d 470, 471 (Ga. Ct. App. 2003). Under § 11-2-314, "a warranty that the goods sold shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale." § 11-21-314(1). To prevail on such a breach of warranty claim, a plaintiff must show "(1) that the goods were subject to the warranty; (2) that the goods were defective; (3) that the injury was caused by the defective goods; and (4) that damages were incurred as a result." *Mitchell*, 582 S.E.2d at 471–72. Defendant attacks prongs two and three.

### 1. Defective Good

Defendant first asserts that "there is no evidence the goods were defective[.]" (Doc. 20 at 4–5). Although the argument is somewhat muddled, it appears that Defendant contends that Plaintiff's affidavit is a "sham affidavit" and that, without that affidavit, there is insufficient evidence to create a genuine dispute about whether the petrified bean was defective. (*Id.*) Defendant's argument is misguided for two reasons.

---

[5] The Court has no need to find so for purposes of this motion, but it is readily apparent from Plaintiff's seven-page, succinct, pleading that she asserts a claim for both negligence and breach of warranty. (*See* Doc. 1-2 at 5 ¶ 12) ("As a result of the negligence and breach of warranties by the defendant, plaintiff has suffered damages and expenses . . . ."); (*id.* at 6 ¶ 15) ("[P]laintiff has additionally endured pain and suffering as a result of the injuries which said injuries were caused by negligence and breach of warranties as set out herein."). The Court finds Defendant's claimed surprise at Plaintiff's breach of warranty claim, at best, puzzling, given that even a cursory review of Plaintiff's succinct complaint would have revealed a breach of warranty claim. (*C.f.* Doc. 20 at 4) ("Defendant did not address Plaintiff's supposed 'breach of warranties' claim in its Motion for Summary Judgment because Defendant had no notice of such claim.").

First, while it is true that the Court may disregard an affidavit it finds to be a "sham[,]" *see Fucron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306–07 (11th Cir. 2016), that is not appropriate here. In limited circumstances, a district court may disregard a party's "affidavit as a matter of law when, without explanation, it flatly contradicts his or her own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously[.]" *Id.* (citing *Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986); *Van T. Junkins & Assocs. v. U.S. Indus., Inc.*, 736 F.2d 656 (11th Cir. 1984)). This rule "operates in a limited manner to exclude unexplained discrepancies and inconsistencies, as opposed to those 'which create an issue of credibility or go to the weight of the evidence.'" *Id.* (citing *Tippens*, 805 F.2d at 953). In other words, "[a]n opposing party's affidavit should be considered although it differs from or varies [from] his evidence as given by deposition . . . and the two in conjunction may disclose as [sic] issue of credibility." *Id.* (citing *Tippens*, 805 F.2d at 953).

Here, Defendant points to a number of claimed inconsistencies between Plaintiff's deposition testimony and her affidavit. (*See e.g.*, Doc. 20 at 5) ("Plaintiff testified at her deposition that she did not know what she bit that purportedly caused the injury. However, plaintiff has since changed her sworn testimony to reflect an allegation that a 'foreign object' was in the green beans . . . ." (citation omitted)).[6] To the extent it would be fair to characterize these minor discrepancies as truly inconsistent, they are precisely the type of differences which create issues of credibility or go to the weight of Plaintiff's evidence. As such, they do not render Plaintiff's affidavit a "sham" and the Court declines to disregard her affidavit on that basis.

Second, even in the absence of Plaintiff's affidavit, her deposition testimony alone is sufficient to create a genuine dispute as to whether Defendant sold a defective good. A food is defective, within the meaning of § 11-2-314 if "a jury could reasonably find that because of the nature of the food, [a buyer] should not reasonably have anticipated" the substance that caused the injury. *See Mitchell*, 582 S.E.2d at 470–73 (finding genuine dispute as to whether

---

[6] Defendant also points to inconsistencies between Plaintiff's deposition testimony and the allegations in her Complaint. (Doc. 20 at 4–5). These inconsistencies matter little. Discovery often clarifies issues, and a party is not bound, verbatim, to the facts alleged in their pleadings.

8

food was defective when there was evidence that plaintiff bit down on a bone chip in a hamburger).

Plaintiff's deposition testimony, taken in the light most favorable to her, reflects that while she was eating green beans sold by Defendant, she bit down on an object which "didn't even break - . - it didn't even crack." (Doc. 15-3 at 39). That object caused Plaintiff to feel "something break immediately, and the pain came shortly after." (*Id.* at 42). No buyer should reasonably anticipate that, when eating green beans, they should bite down on an object that is so hard that it does not give or an object that should cause immediate severe pain.[7] As such, a jury could reasonably find that the petrified bean was defective within the meaning of § 11-2-314. Accordingly, the Court finds that there is sufficient Record evidence to show that the good Defendant sold Plaintiff was defective. Summary judgment is therefore not warranted on that ground.

**2.   Causation**

Next, Defendant contends summary judgment is warranted because Plaintiff has failed to show that her injury was caused by the allegedly defective good. (*See* Doc. 15 at 7–11); (Doc. 20 at 5–8).[8] To establish causation, a plaintiff must "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Head v. Sears Roebuck & Co.*, 503 S.E.2d 354, 355–56 (Ga. Ct. App. 1998) (citation omitted) (quoting *Nelson v. Polk Cnty. Hist. Soc'y, Inc.*, 456 S.E.2d 93, 95 (Ga. Ct. App. 1995)). The question of proximate cause is usually reserved for the jury, *Johnson v. Avis Rent A Car Sys.*, 858 S.E.2d 23, 29 (Ga. 2021), and "most 'medical

---

[7] Although Plaintiff is unable to produce the offending bean at this time, that appears to be the result of Defendant's employee disposing of the bean before it might have been examined in more detail. (*See* Doc. 15-3 at 39–40).

[8] Just as with Defendant's previous argument, supplemental briefing clarified this issue. From Defendant's initial brief, it was unclear whether it moved for summary judgment on the issue of causation, or for resulting damages. As the Court noted above, it is far from clear from the Record before the Court the exact course of medical treatment Plaintiff received as a result of her dental injury, and the precise extent of the injuries she sustained. As such, partial summary judgment might well have been appropriate as to some of Plaintiff's claimed damages. However, Defendant is clear in its supplemental brief that "the Court need not address whether Plaintiff has come forward with evidence sufficient to create a genuine issue of material fact on damages[.]"(Doc. 20 at 2). The Court will thus address only Defendant's argument for summary judgment on Plaintiff's negligence claims on the issue of causation.

9

questions' relating to causation are perfectly capable of resolution by ordinary people using their common knowledge and experience, without the need for expert testimony." *Cowart v. Widener*, 697 S.E.2d 779, 785 (Ga. 2010) (internal quotations removed); *see Jester v. State*, 296 S.E.2d 555, 556 (Ga. 1982) ("[T]hat a stab wound penetrating entirely through the heart causes death, is not a matter in the common experience of the human race which should even require expert testimony."). For example, a jury may reasonably infer causation "in light of [a] short lapse [of time] between [the] accident and . . . onset of symptoms and receipt of medical treatment." *Hutcheson v. Daniels*, 481 S.E.2d 567, 569 (Ga. Ct. App. 1997).

Defendant asserts that this case is one which raises medical questions of the kind which require Plaintiff to produce expert evidence to show causation. (Doc. 20 at 5–6). To the extent that some of Plaintiff's claimed injuries would require expert evidence to show that they were caused by the petrified bean, the Court agrees with Defendant (i.e. the removal of her cracked tooth). Indeed, if a case presents "specialized medical questions" related to causation "plaintiffs must come forward with expert evidence to survive . . . summary judgment[.]" *Zephaniah v. Ga. Clinic, P.C.*, 890 S.E.2d 86, 91 (Ga. Ct. App. 2023) (quoting *Cowart*, 697 S.E.2d at 785). Such questions are present "where the existence of a causal link between the defendant's conduct and the plaintiff's injury cannot be determined from common knowledge and experience." *Cowart*, 697 S.E.2d at 784; *id.* at 788 ("A jury could not find a causal relationship between [defendant's] failure to render aid at the time . . . he first observed [plaintiff] was in real distress, . . . and [plaintiff's] death from internal bleeding [later] . . . .").

Summary judgment is not warranted, however, where at least some of Plaintiff's claimed damages are "perfectly capable of resolution by ordinary people using their common knowledge and experience." *Zephaniah*, 890 S.E.2d at 330. For example, in *Zephaniah* a plaintiff alleged that a negligent blood draw caused her extreme pain at the time, and which resulted in numerous latent medical conditions. *Id.* at 326. The *Zephaniah* court found:

> [T]he vast majority of Zephaniah's claimed damages undoubtedly require expert testimony to establish causation. The trial court nonetheless erred by granting summary judgment on Zephaniah's entire ordinary negligence claim because the instantaneous pain she experienced due to the alleged negligence of the technician during the blood draw is "perfectly capable of

10

>resolution by ordinary people using their common knowledge and experience."

*Id.* at 330. In other words, even if the full extent and nature of a plaintiff's claimed damages are only ascertainable with the help of expert testimony, summary judgment is not warranted on the issue of causation if the fact that an injury occurred is capable of resolution by a jury.

Here, the Record reflects that Plaintiff suffered significant pain from biting into the petrified bean as well as damage to her braces which pierced her cheek. (*See e.g.*, Doc. 16-2 at 2 ¶ 4) ("I bit down on something that was extremely hard and it caused the wire on my braces in the right back side to break pierce [sic] the inside of my cheek . . . ."); (*id.*) ("I . . . felt tremendous pain in one or more of the lower right teeth in the rear."). From such evidence, a reasonable jury could find that Plaintiff sustained an injury based on its own common knowledge and experience. The rest is a question of damages, and because Defendant does not move for summary judgment on the issue of damages, that question is one that must be resolved at trial. Accordingly, the Court finds that a genuine dispute remains as to the issue of causation, and summary judgment is not warranted on that ground.

## V. CONCLUSION

In sum, the Court rejects each of Defendant's arguments for summary judgment. Accordingly, the Motion for Summary Judgment (Doc. 15) is **DENIED**.[9] That Motion having been denied, this matter is ready for trial. Therefore, the trial in this matter is noticed for the Valdosta Division 2025 trial term to begin on Monday, February 3, 2024. A separate order or notice to prepare a proposed pretrial order will be issued.

**SO ORDERED**, this 21st day of November 2024.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**

---

[9] Additionally, Defendant argues that Plaintiff improperly failed to disclose evidence during discovery that she relied upon in her Response. (Doc. 20 at 7). In particular, it argues that the Court should not "rely upon evidence related to Dr. Elseweifi or his treatment to survive summary judgment." (*Id.*)The Court does not rely on evidence related to Dr. Elseweifi in denying Defendant's Motion for Summary Judgment and the admissibility of his hearsay statements are thus not appropriate for resolution at this stage. The Court, however, makes no finding as to the admissibility of those statements, as may be determined at a later stage in the proceedings or at trial.